UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN GABBARD,

               Plaintiff,               Case No. 2:18-cv-13278
                                         District Judge Paul D. Borman
v.                                    Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

               Defendant.
_____/

**<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12),
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF
No. 15) and AFFIRM THE COMMISSIONER'S DECISION</u>**

**I.**    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment

(ECF No. 15), and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

      Plaintiff, Steven Gabbard, brings this action under 42 U.S.C. § 405(g) and

42 U.S.C. §1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying his application for Disability Insurance (DI)

and Supplemental Security Income (SSI) benefits.  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 12), the Commissioner's cross-motion for summary judgment (ECF No. 15), Plaintiff's reply (ECF No. 16) and the administrative record (ECF No. 7).

### A.     Background and Administrative History

#### a.  Prior Claim

Plaintiff filed a prior claim for disability insurance benefits on November 27, 2012.  (R. at 115.)  A hearing regarding this prior claim was held on May 21, 2014, and ALJ MaryJoan McNamara ultimately found that the Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 112-131.)

#### b.  Current Claim and Appeal

Plaintiff alleges his disability began on June 28, 2014, at the age of 48.  (R. at 297.)  In his disability report, he lists Bipolar disorder, major depression, anxiety disorder, panic attacks, agoraphobia, arthritis in knees, arthritis in hips, arthritis in left shoulder, arthritis in elbows, and arthritis in hands as limiting his ability to work.  (R. at 302.)  His application was denied on June 6, 2016.  (R. at 178.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 212-13.)  On August, 25, 2017, ALJ Carrie Kerber held a hearing, at which Plaintiff and a vocational expert (VE), Joseph Thompson testified.  (R. at 51-72.)  On December 18, 2017, ALJ Kerber issued an opinion, which determined that

2

Plaintiff was not disabled within the meaning of the Social Security Act.  (R. a 30-49.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at 268-272.)  However, on August 20, 2018, the Appeals Council denied Plaintiff's request for review.  (R. at 1-6.)  Thus, ALJ Kerber's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on October 19, 2018.

### B.    Plaintiff's Medical History

The administrative record contains approximately 520 pages of medical records, which were available to the ALJ at the time of her December 18, 2017 decision.  (R. at 49, 384-904 [Exhibits B1F-B8F].)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 28, 2014, the alleged onset date.  (R. at 36.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: mental impairments variously diagnosed as bipolar disorder, generalized anxiety, social anxiety, agoraphobia, and antisocial personality disorder.  (R. at 36.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of

3

impairments that met or medically equaled the severity of one of the listed

impairments.  (R. at 36.)  **Between Steps 3 and 4** of the sequential process, the

ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined

that Plaintiff had the RFC:

> . . . to perform a full range of work at all exertional levels but with the
> following nonexertional limitations: the claimant is limited to simple
> tasks that are not fast paced[,] meaning the pace of productivity is not
> dictated by an external source over which the claimant has no control;
> only occasional interaction with coworkers and supervisors, but no
> tandem tasks; no interaction with the public; and the work routine
> should be repetitive from day to day with few and expected changes.

(R. at 39.)[2]  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any

past relevant work.  (R. at 43.)  At **Step 5**, considering Plaintiff's age, education,

---

[1] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d
235, 239 (6th Cir. 2002).

[2] The decision also states:

> In accordance with Acquiescence Ruling 98-4(6), adjudicators must
> adopt a finding required at a step in the sequential evaluation process
> and made by an Administrative Law Judge or the Appeals Council in
> a final decision on a prior claim, unless there is new and material
> evidence relating to such a finding or there has been a change in the
> law.  Therefore, unless there is new and material evidence or a
> showing of "changed circumstances" relating to a determination of the
> present claim, the undersigned is bound by the previous findings and
> determinations, including any findings of fact which are relevant to
> the claimant's residual functional capacity.  Furthermore, new
> evidence will be considered material only if it both differs from that
> presented in the prior claim and warrants a finding different than that

work experience, and RFC, the ALJ determined that there were jobs that existed in

significant numbers in the national economy that Plaintiff could perform, such as

janitor, detailer, and laundry worker.  (R. at 44.)  The ALJ therefore concluded that

Plaintiff had not been under a disability, as defined in the Social Security Act,

since June 28, 2014.  (R. at 44.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see

also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

---

made in the decision on the prior claim (Acquiescence Rulings 98-
3(6) and 98-4(6)).  The undersigned has changed wording of prior
Administrative Law Judge findings with respect to residual functional
capacity, but it is not substantially different – just articulated more in
conformance with our changed rules since the previous decision.

(R. at 39.)  Plaintiff does not appear to raise any issues on appeal related to the
above.

but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff alleges that the ALJ failed to satisfy the treating physician rule and

improperly discounted the opinions of Plaintiff's treating source, Dr. Kim Horn,

because: (1) the ALJ did not consider most of the *Wilson* factors, and (2) the ALJ

afforded great weight to the opinion of State agency consultant Dr. Daniel Blake,

Ph.D., who did not review Dr. Horn's opinions, and whose own opinion is

inconsistent with the record evidence.  (ECF No. 12, PageID.959-965; ECF No.

16, PageID.1000-1004.)  He asserts further that adoption of Dr. Horn's opinions

would require a finding of disability.  (ECF No. 12, PageID.965.)  The

Commissioner does not assert that the ALJ gave good reasons for discounting Dr.

Horn's opinions (ECF No. 15, PageID.979 n. 3), but instead responds that the ALJ

complied with the procedural safeguards of the treating physician rule, that any

error would otherwise be harmless because Dr. Horn's opinions are patently

deficient, and that the ALJ permissibly gave great weight to the opinion of the

State agency consultant Dr. Michele Leno, Ph.D.[3]  (ECF No. 15, PageID.979-994.)

---

[3] As Plaintiff asserts, the ALJ identified the State agency psychological consultant
for whose opinion she afforded great weight as Dr. Leno, but it is clear from her
record citations and description of the opinion that she actually afforded great
weight to the opinion of Dr. Blake, the other State agency psychological consultant
who reviewed Plaintiff's claim.  Dr. Blake completed his review on March 17,

7

The Court should agree, in part, with the Commissioner, and conclude that remand is unwarranted because the ALJ complied with the procedural safeguards of the treating physician rule to discount Dr. Horn's opinions.

### 1.    Dr. Horn's treatment and findings

Dr. Horn treated Plaintiff at Monroe Community Mental Health Services (MCMHS) for several years, including during the relevant time period related to Plaintiff's current claim of disability.  (Exhibits B1F, B2F, B3F, B5F, B6F, B7F.)  During the course of treatment, Dr. Horn completed two medical source statements for Plaintiff—one on February 25, 2016, and one on May 4, 2017.  (R. at 761-768, 873-879 [Exhibits B2F, B7F].)  These are the opinions at issue on appeal.

The 2016 medical source statement lists Plaintiff's diagnoses as bipolar D/O and anxiety, states that he went through multiple medicinal changes due to ineffectiveness, and contains a page on which Dr. Horn checked boxes identifying Plaintiff's signs and symptoms.  (R. at 763-764.)  Additionally, the statement includes Dr. Horn's opinions regarding Plaintiff's ability to perform unskilled work, semi-skilled work, and particular types of jobs, in the form of checked boxes next to various aptitudes and abilities.  (R. at 765-766.)  For the abilities associated with unskilled work, Dr. Horn found Plaintiff had "No useful ability to function"

---

2016 (*see* R. at 145 [Exhibit B2A]), while Dr. Leno completed her review on May 27, 2016 (*see* R. at 139 [Exhibit B2A]).  Thus, the Commissioner's arguments pertaining to Dr. Leno's opinions should be given little consideration.

with regard to all but three.  Further, for all of the abilities associated with semi-skilled or skilled work, Dr. Horn found that Plaintiff had "No useful ability to function."  (R. at 765-766.)  The form defines "No useful ability to function" as "an extreme limitation, mean[ing] your patient cannot perform this activity in a regular work setting."  (R. at 765.)  As an explanation for the limitations she identified by checkmark, Dr. Horn wrote: "Anxiety – severe anxiety impairs his ability to function on a daily basis.  Stays home."  (R. at 766.)  Finally, Dr. Horn stated that Plaintiff could be expected to miss more than four days of work per month as a result of his impairments, and that Plaintiff would have difficulty working a regular job on a sustained basis because his severe anxiety impaired all aspects of his life.  (R. at 767.)

Dr. Horn's 2017 medical source statement is similar, though she checked boxes next to far fewer signs and symptoms, and updated Plaintiff's prognosis from "poor" to "guarded," stating that his agoraphobia was severe and his anxiety high.  (R. at 873-874.)  Further, Dr. Horn, somewhat confusingly, checked boxes indicating that Plaintiff was "Seriously limited" with regard to the abilities needed to perform semi-skilled and skilled work, but "Unable to meet competitive standards," a more severe limitation, with regard to the abilities required to perform unskilled work.  (R. at 875-876.)  She explained those limitations by stating, in part, that Plaintiff was unable to focus, suffered from agoraphobia, did

not get along well with others, and suffered from bipolar D/O and anxiety.  (R. at

876.)  And, finally, Dr. Horn again said Plaintiff could likely be expected to miss

more than four days of work per month as a result of his limitations.  (R. at 877.)

### 2. The ALJ gave Dr. Horn's opinions "partial weight"

The ALJ considered Dr. Horn's 2016 and 2017 medical source statements

and gave them "partial weight," stating:

> Turning to the opinion evidence, in a medical source statement,
> completed in February 2016 and May 2017, Kim Horn, M.D., opined
> that the claimant would be absent from work more than four days per
> month, his anxiety is severe and impairs his ability to function on a
> daily basis.  (Exhibits B2F, B7F).  The undersigned has given Dr.
> Horn's opinion partial weight.  Dr. Horn's limitations are extreme
> considering the claimant's ability to leave his home to attend
> appointments, go to the grocery store, and buy cigarettes.

(R. at 41.)  In contrast, she gave the opinion of Dr. Blake[4] "great weight," stating:

> [A] State agency psychological consultant, opined that the claimant
> retains sufficient mental function for sustained simple work activity.
> (Exhibits B2A at 14, B3A at 14).  The undersigned has given this
> opinion great weight as it is consistent with the medical record as a
> whole, it provides insight into the severity of the claimant's
> impairments and how they affect his ability to function, and the State
> agency consultant has specialized knowledge in assessing clinical
> findings within the Social Security standard.  The opinion has been
> provided for in the residual functional capacity assessment with
> limitations for simple tasks that are not fast paced[,] meaning the pace
> of productivity is not dictated by an external source over which the
> claimant has no control.  This is similar to the prior Administrative
> Law Judge findings, but the undersigned has articulated restrictions

---

[4] Again, the ALJ states that she is giving the opinion of Dr. Leno great weight, but
it is clear from her findings that she is actually referring to the opinion of Dr.
Blake.

more in conformance with our changed rules since the previous
decision.

(R. at 42-43.)

### 3.    Opinion of treating source

The ALJ must consider all medical opinions that he or she receives in

evaluating a claimant's case.  20 C.F.R. § 416.927(b).[5]  The regulations define

medical opinions as "statements from acceptable medical sources . . . that reflect

judgments about the nature and severity of your impairment(s), including your

symptoms, diagnosis and prognosis, what you can still do despite impairment(s),

and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(1).  ALJs "will

consider . . . administrative medical findings and medical evidence from our

Federal or State agency medical or psychological consultants . . . [,]" but "are not

required to adopt any prior administrative medical findings[.]"  20 C.F.R. §§

404.1513a(b)(1), 416.913a(b)(1).

The ALJ generally gives deference to the opinions of a treating source

"since these sources are likely to be the medical professionals most able to provide

a detailed, longitudinal picture of [a patient's] medical impairment(s) and may

bring a unique perspective to the medical evidence that cannot be obtained from

---

[5] This regulation applies to claims filed before March 27, 2017.

the objective medical findings alone . . . ."  20 C.F.R. § 416.927(c)(2); *Blakley*, 581

F.3d at 408.

> Medical opinions from treating sources about the nature and severity
> of an individual's impairment(s) are entitled to special significance
> and may be entitled to controlling weight.  If a treating source's
> medical opinion on an issue of the nature and severity of an
> individual's impairment(s) is well-supported by medically acceptable
> clinical and laboratory diagnostic techniques and is not inconsistent
> with the other substantial evidence in the case record, the adjudicator
> must give it controlling weight.

S.S.R. 96-8p at *7.  In other words, an ALJ "may not substitute his own medical

judgment for that of the treating physician where the opinion of the treating

physician is supported by the medical evidence."  *Simpson v. Comm'r of Soc. Sec.*,

344 F. App'x 181, 194 (6th Cir. 2009) (quotation marks and citation omitted).

If the ALJ does not afford controlling weight to a treating physician's

opinion, the ALJ must meet certain procedural requirements.[6]  *Wilson v. Comm'r*

---

[6] An exception exists for treating source opinions on issues that are reserved to the
Commissioner, which "are never entitled to controlling weight or special
significance."  S.S.R. 96-5p, 61 FR 34471-0, at *34473.  Examples of issues
reserved to the Commissioner include:

1. Whether an individual's impairment(s) meets or is equivalent in
   severity to the requirements of any impairment(s) in the listings;
2. What an individual's RFC is;
3. Whether an individual's RFC prevents him or her from doing past
   relevant work;
4. How the vocational factors of age, education, and work experience
   apply; and
5. Whether an individual is "disabled" under the Act.

*of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not

give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors – namely, the length of the
> treatment relationship and the frequency of examination, the nature
> and extent of the treatment relationship, supportability of the opinion,
> consistency of the opinion with the record as a whole, and the
> specialization of the treating source – in determining what weight to
> give the opinion.

*Id.  See also* 20 C.F.R. § 404.1527(c).[7]

However, while an ALJ must "always give good reasons in [the ALJ's]

notice of determination or decision for the weight [the ALJ] give[s] your treating

source's opinion," 20 C.F.R. § 416.927(c)(2), and "must be sufficiently specific to

make clear to any subsequent reviewers the weight the adjudicator gave to the

treating source's medical opinion and the reasons for that weight," *Friend v.

Comm'r of Soc. Sec*, No. 09-3889, 375 F. App'x 543, 550 (6th Cir. 2010) (per

curiam) (internal quotation omitted), there is no *per se* rule that requires a written

articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§

404.1527(c)(2)-(6), 416.927(c)(2)-(6), *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x

216, 222 (6th Cir. 2010). In other words, the regulations do not require "an

---

*Id.*

[7] This rule applies to claims filed before March 27, 2017.

exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson*, 378 F.3d at 547). *See also Betty v. Comm'r of Soc. Sec.*, No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016). "In the last of these circumstances, the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments." *Friend*, 375 F. App'x at 551. But "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the

regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Id.*

The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that [he] is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544-45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

      **4.**      **The ALJ complied with the procedural safeguards of the treating physician rule to partially discount Dr. Horn's opinions.**

It bears repeating that the Commissioner does not argue that the ALJ gave "good reasons" for discounting Dr. Horn's opinions. (ECF No. 15, PageID.979, n.3.) Thus, I will focus on the harmless error standard to review the ALJ's treatment of Dr. Horn's opinions.

15

There is no doubt that the ALJ's statement regarding Dr. Horn's opinions is short and perfunctory, and fails to address several of the *Wilson* factors, impliedly addressing only the supportability of the opinions and their consistency with the record as a whole.  (*See* R. at 41.)  But, as provided above, compliance with the treating physician rule does not require a written articulation of each of the factors, *Tilley*, 394 F. App'x at 222, and failure to discuss the requisite factors may constitute harmless error where an ALJ meets the goal of the procedural safeguards by indirectly attacking the supportability of a doctor's opinion via her analysis of the claimant's ailments, *Friend*, 375 F. App'x at 551.

Assuming error, the error here is harmless because, despite the ALJ's cursory direct analysis of Dr. Horn's opinions, she indirectly attacked the consistency and supportability of those opinions throughout her disability determination.  In other words, she complied with the procedural safeguards of the treating physician rule by providing a "logical bridge between the evidence and the result." *Samona v. Comm'r of Soc. Sec.*, No. 2:15-cv-11713, 2016 WL 3951420, at *8-9 (E.D. Mich. June 24, 2016), *report and recommendation adopted*, No. 15-cv-11713, 2016 WL 3924108 (E.D. Mich. July 20, 2016).

Throughout her disability determination,  the ALJ provided a thorough recitation of Plaintiff's: (1) hearing testimony, including testimony addressing his ability to leave home to attend treatment appointments, go to the grocery store, and

buy cigarettes; and, (2) the treatment history with Dr. Horn and others at MCMHS, including citation to specific medical records. (R. at 37-43.) And despite Plaintiff's assertions to the contrary, the ALJ did so while acknowledging Plaintiff's tendency to overmedicate before undertaking these tasks, and to complete the tasks early in the morning to avoid others. (*See, e.g.,* R. at 37 ("[Plaintiff] testified he will go to grocery store with his wife, but also stated he has panic attacks in crowds of people or when thinking about leaving the house. He testified he can go to the store early in the morning when no one is around to purchase cigarettes."); R. at 41 (in a January 2016 MCMHS visit, Plaintiff "indicated that if he 'does not overmedicate, he won't leave the house'"), citing R. at 844 [Exhibit B5F].)) Indeed, the ALJ appeared to take these limitations as well as those outlined in Dr. Horn's opinions into account as part of her RFC determination, limiting Plaintiff to "simple tasks that are not fast paced[,] meaning the pace of productivity is not dictated by an external source over which the claimant has no control; only occasional interaction with coworkers and supervisors, but no tandem tasks; no interaction with the public; and the work routine should be repetitive from day to day with few and expected changes." (R. at 39.)

The ALJ also indirectly challenged Dr. Horn's opinions through her analysis of Dr. Blake's opinion, which the ALJ stated was consistent with the medical

record, discussed throughout her decision, as a whole, and provided insight into how Plaintiff's impairments affected his ability to function.  (R. at 42.) "Generally, an ALJ is permitted to rely on State agency physician's opinions to the same extent as she may rely on opinions from other sources.  20 C.F.R. § 404.1527.  Thus, an ALJ may provide greater weight to a state agency physician's opinion when the physician's finding and rationale are supported by evidence in the record."  *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274 (6th Cir. 2015).

Plaintiff asserts that Dr. Blake's opinion is not consistent with the record evidence because he did not examine Dr. Horn's statements to formulate his opinion, and because his "opinion that plaintiff was not significantly impacted at all in his ability to interact appropriately with the general public or get along with co-workers" was "at odds with the ALJ's own RFC assessment, which found that plaintiff was only capable of occasional interaction with co-workers and supervisors, and could not have *any* interaction with the general public."  (ECF No. 12, PageID.964-965.)  However, Dr. Blake completed his analysis of Plaintiff's claim on March 17, 2016, less than one month after Dr. Horn's first medical source statement, which became far less relevant after the release of Dr. Horn's updated 2017 medical source statement, showing some improvement in Plaintiff's

condition.[8]  And, although Dr. Blake's opinion may, in some ways, be inconsistent

with the resulting RFC, the ALJ afforded the opinion great, but not controlling,

weight.  (R. at 42-43.)  In fact, she specified that "[t]he opinion has been provided

for in the residual functional capacity assessment with limitations for simple tasks

that are not fast paced[,] meaning the pace of productivity is not dictated by an

external source over which the claimant has no control" (R. at 43), which has

nothing to do with Plaintiff's interaction with others.  Moreover, Dr. Horn's 2017

medical source statement is itself inconsistent, as she inexplicably opined that

Plaintiff had greater limitations with regard to unskilled work than semi-skilled or

skilled work.  (R. at 875-876.)  This Court cannot now "reconsider facts, re-weigh

the evidence, resolve conflicts in evidence, decide questions of credibility, or

substitute its judgment for that of the ALJ."  *Reynolds v. Comm'r of Soc. Sec.*, 424

F. App'x 411, 414 (6th Cir. 2011).

Finally, the ALJ indirectly challenged the supportability of Dr. Horn's

opinions at the end of her RFC determination, stating:

> Although the claimant has received treatment for the allegedly
> disabling impairment(s), that treatment has been essentially routine
> and conservative in nature.  There is evidence that the claimant
> stopped working for reasons not related to the allegedly disabling
> impairments.  *The claimant noted that he was laid off of work most
> recently because they found out about his past felony*.  (Exhibit B1F at

---

[8] It does not appear, as Plaintiff asserts, that Dr. Blake reviewed Dr. Horn's 2016
medical source statement (*See* R. at 135 [Exhibit B2A]), although it is not entirely
clear.

140).  This raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments.

(R. at 43 (emphasis added).)  Both observations are valid considerations, *see Jacobi v. Comm'r of Soc. Sec.*, No. 12-CV-14518, 2014 WL 354652, at *7 (E.D. Mich. Jan. 31, 2014) ("The ALJ noted that the claim of disability occurring in June, 2007 was contradicted by Plaintiff's acknowledgement that he had been fired that month after it was discovered that he had been convicted of a felony[.]"); *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 808-809 (6th Cir. 2012) (to discount a treating physician's opinion, an ALJ may validly consider that the treatment provided to the claimant is routine and conservative).  And the record supports the ALJ's findings.  Plaintiff's own summary of the facts in his summary judgment motion reveal treatment for his impairments through medication and therapy (ECF No. 12, PageID.949-958), and according to a medical record from MCMHS dated January 14, 2015, Plaintiff did, in fact, report that he believed he had been laid off of work at his most recent job two years prior because the employer found out about his past felony (R. at 392.)  Thus, the Court should find that, reading the ALJ's decision as a whole, the ALJ complied with the procedural safeguards of the treating physician rule, *Nelson*, 195 F. App'x at 470 by creating a

"logical bridge" between the evidence and the result.  *Samona*, 2016 WL 3951420, at *8-9.[9]

### F.    Conclusion

Plaintiff has the burden of proof on his statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  Plaintiff has not shown legal error that would upend the ALJ's decision.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment (ECF No. 15), and **AFFIRM** the Commissioner of Social Security's decision.

---

[9] Moreover, the ALJ examined Plaintiff's credibility, and found:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. at 43).  *See Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").  Plaintiff does not identify the credibility finding as an issue on appeal, and makes no argument in that regard.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

22

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated:  January 27, 2020

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE